COUNTRY INNS & SUITES BY
CARLSON, INC.,

              **Plaintiff,**

**-vs-**                                  **Case No.  6:07-cv-104-Orl-28DAB**

INTERSTATE PROPERTIES, LLC and
WILLIAM ABRUZZINO,

              **Defendants.**

_____/

## ORDER

Plaintiff, Country Inns & Suites by Carlson, Inc. ("Country"), brings the instant action alleging several breaches of a license agreement.  Country contends that Defendants Interstate Properties, LLC ("Interstate") and William Abruzzino ("Mr. Abruzzino") owe liquidated damages and unpaid fees under the now-terminated license agreement based on their default thereunder.  Interstate is alleged to be liable under the license agreement itself, and Mr. Abruzzino is alleged to be jointly and severally liable based on a guaranty that he signed.

This cause is currently before the Court on the cross-motions for summary judgment (Docs. 35 & 38) filed by Interstate and Country and the respective responses thereto (Docs. 40 & 39).  Having considered the parties' submissions and pertinent law, the Court concludes that Interstate's motion must be denied and Country's motion must be granted in part and denied in part.

I.  Background

The facts are largely undisputed.[1]  Country is a licensor of "guest lodging systems"[2] and is the franchisor of the "Country Inn & Suites by Carlson®" ("CISC") franchise system. In February 2004, Country and Interstate entered into a 15-year license agreement ("the Agreement") allowing Interstate to operate a hotel in Orange City, Florida as a CISC hotel ("the Hotel").  The Hotel had originally been built and operated by Interstate as a Holiday Inn Express® hotel.

At the time the Agreement was executed, Interstate's CEO, Mr. Abruzzino, executed a personal guaranty of the Agreement, guaranteeing that he would make full payment to Country of amounts due thereunder.  It is undisputed that Mr. Abruzzino is an experienced hotelier and currently owns and manages six hotels.   (Joint Pretrial Statement at 6). According to his resumé, Mr. Abruzzino and his wife "have been commercial retail real estate developers for approximately 33 years."  (Ex. 3D to Doc. 38).

Article 5 of the Agreement provided for the payment of various fees to Country, including but not limited to:  a nonrefundable Initial Fee of $40,000 (Article 5.1); a Royalty Fee of 4.5% of daily Gross Room Revenues throughout the term of the Agreement (Article 5.2); a Marketing Fee of 2.5% of daily Gross Room Revenues throughout the term of the Agreement (Article 5.3); and a Reservation Fee of 1.25% of Gross Room Revenues.  The Royalty Fee and Marketing Fee for each month were due within fifteen days of the end of

---

[1]The facts in the Background section of this Order are taken largely from the statement of admitted facts in the parties' Joint Final Pretrial Statement (Doc. 43 at 5-10).

[2](See Compl., Doc. 1, ¶ 1).

that month, and other fees were due upon invoice.  (Article 5.7).

The Agreement also listed certain events of default for which there would be no opportunity to cure, (see Article 17.1), including "[c]easing to continuously [o]perate the Hotel" and "[f]ailure to comply with the provisions of this Agreement with respect to Transfers."  (Article 17.1(f) & (i)).  The provisions regarding transfers included a "Right of First Negotiation" under which Interstate was required to "first deliver to Country a notice offering to Transfer the Hotel to Country ("Offer")" before Interstate transferred the Hotel to someone else.  (Article 20.2(a)).  Then, if Country did not accept the Offer, Interstate could "proceed to Transfer the Hotel, subject to Section 20.3, provided that the Transfer must be on terms that do not materially deviate from the Offer."  (Article 20.2(c)).  Section 20.3, to which Transfers by Interstate were made subject, requires that the Hotel be transferred to someone who enters into a new license agreement with Country. (Section 20.3(a)).  The License Agreement also included a Liquidated Damages provision:

> If this Agreement is terminated because of [Interstate's] default, the actual damages that Country would suffer for the loss of prospective fees and other amounts payable to Country under Article 5 would be difficult if not impossible to ascertain. Therefore, if this Agreement is terminated because of Licensee's default, Licensee within 10 days of such termination will pay to Country as liquidated damages and not as a penalty a reasonable estimate of the probable damages that Country would suffer for the loss of prospective fees and other amounts payable under Article 5, calculated as follows:  (i) three times the Royalty and Marketing Fees payable to Country under Sections 5.2 and 5.3 for the 12 months of the Hotel's Operation as a System Hotel immediately preceding the date of termination of this Agreement . . . .

(Article 17.4).

Interstate duly paid the $40,000 Initial Fee, and Interstate also spent approximately $350,000 to make improvements and renovations to the Hotel pursuant to the License Agreement's "Property Improvement Plan" provisions.  Interstate operated the Hotel as a CISC hotel until 2006, when "hurricanes and other concerns caused it to no longer wish to own a hotel in that region of the country."  (Doc. 43 at 8).

Interstate sought a buyer for the Hotel and eventually entered into an agreement with Ambe, Inc. ("Ambe") for its sale.  On June 16, 2006, pursuant to the "Right of First Negotiation" in Article 20.2 of the Agreement, Interstate advised Country of its desire to sell the Hotel and of the terms of its intended sale.  (See Letter from Interstate's counsel to Country, June 16, 2006, part of Ex. B to Doc. 39).  Interstate expressed its intention to proceed with the sale of the Hotel if Country did not wish to purchase it, and Interstate requested that Country provide a "revised Standard License Agreement . . . for delivery to the prospective purchaser."  (Id. at 2).

On June 22, 2006, Country wrote to Jagdish Singh ("Mr. Singh"), the principal of Ambe, regarding his interest in purchasing the Hotel, informing him that Country's approval was required for the transfer and explaining the steps for transfer of the License Agreement. (Letter from Country to Singh, June 22, 2006, part of Ex. B to Doc. 39).  On June 29, 2006, Country informed Interstate that Country was not going to exercise its right to purchase the Hotel.

Mr. Abruzzino encouraged Mr. Singh to continue to operate the Hotel as a CISC hotel, but Mr. Singh declined to do so, instead deciding he would operate it as a Holiday Inn Express®.  In a letter dated October 4, 2006, Interstate advised Country that Interstate had

sold the Hotel to Mr. Singh and that Mr. Singh had declined to accept transfer of the License Agreement.  In a response that same day, Country advised Interstate that Interstate was in default under Sections 17.1(f) and (i) of the License Agreement due to Interstate's failure to continuously operate the Hotel and noncompliance with the provisions regarding transfers. (Letter from Country to Interstate, Oct. 4, 2006, Ex. 3F to Doc. 38).  Country informed Interstate that the License Agreement was terminated effective immediately and without an opportunity to cure.  (Id.)

Five days later, Country advised Interstate that Interstate owed Country past due fees under the License Agreement of $55,938.09 as well as liquidated damages of $341,675.49. Country demanded payment of these damages on or before October 16, 2006.  Interstate did not pay Country as requested, and Country filed this lawsuit on January 23, 2007 (Compl., Doc. 1).  As stated in Interstate's summary judgment motion, Interstate "agrees that it owes fees through the date of termination[] but disputes the amount of those fees," and Interstate disputes "the validity of the liquidated damages clause in the contract, which Interstate contends constitutes an unenforceable penalty and an unreasonable restraint on its right to freely alienate its property."  (Doc. 35 at 4).

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Cross motions for summary judgment do not change the standard." Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).  "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979)).  "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts."  Id.; accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact.  Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." (citations omitted)).

B.  The Merits of the Parties' Motions

1.  Interstate's Motion (Doc. 35)

In its Motion for Partial Summary Judgment (Doc. 35), Interstate notes that it does not dispute that it owes fees under the License Agreement through the date of termination, but it disputes the amount of the fees due.  Interstate seeks judgment in its favor with regard to recovery of liquidated damages, contending that the liquidated damages provisions of the

License Agreement are unenforceable as a matter of law.

The parties agree that Florida law applies.  "It is well settled that in Florida the parties to a contract may stipulate in advance to an amount to be paid or retained as liquidated damages in the event of a breach."  Lefemine v. Baron, 573 So. 2d 326, 328 (Fla. 1991). In 1954, the Supreme Court of Florida "established the test as to when a liquidated damages provision will be upheld and not stricken as a penalty clause."  Id. (citing Hyman v. Cohen, 73 So. 2d 393 (Fla. 1954)).  This test has two prongs:  "First, the damages consequent upon a breach must not be readily ascertainable.  Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages."  Id.

Interstate does not argue that the first part of this test is not satisfied here.  (See Doc. 35 at 6 (assuming without discussion that the first part is met)).  Instead, Interstate contends that the liquidated damages provision of the License Agreement fails the second part of the test for two reasons.  First, Interstate argues that the liquidated damages formula in the Agreement "[e]nsures Country will receive more than it would have reasonably expected to have received if the licensee had performed under the contract."  (Id.)  Second, Interstate asserts that the provision is flawed because "it does not take into account the point in the term of the license when the termination occurs."  (Id.)  Neither of these contentions has merit.

With regard to its first argument, Interstate "accepts for purposes of this motion [Country']s claim that it takes three (3) years to replace a licensee."  (Id. at 7).  However,

Interstate asserts that applying the three-year multiplier would result in a windfall to Country "because it is based upon gross income and not the profits Plaintiff would have received from those fees."  (Id.)  Interstate also contends that Country would receive a windfall under the provision because the liquidated damages amount is payable within ten days of the Agreement's termination but is not reduced to its present value.

Interstate cites no case law in support of these contentions.  Country, on the other hand, notes that liquidated damages provisions with similar fee-based formulas have been upheld by numerous other courts in the hotel franchise context.  See, e.g., Days Inn Worldwide, Inc. v. BFC Mgmt., Inc., 544 F. Supp. 2d 401, 406-07 (D.N.J. 2008) (finding valid a provision in a hotel license agreement that provided for liquidated damages of twenty four months of royalties and basic reservation charges); Ramada Franchise Sys., Inc. v. Cusack Dev., Inc., No. 96 CIV 8085(MGC), 1999 WL 165702, at *6-8 (S.D.N.Y. Mar. 24, 1999) (upholding liquidated damages clause providing for two years' worth of "average monthly recurring fees");  Travelodge Hotels, Inc. v. Kim Shin Hospitality, Inc., 27 F. Supp. 2d 1377, 1383 (M.D. Fla. 1998) ("The computation of damages based on five years['] worth of franchise payments is not unreasonable considering the Licensing Agreement's unexpired term of eighteen years.").  The Court does not find that the formula in the instant liquidated damages clause results in a sum that is "grossly disproportionate to any damages that might reasonably be expected to follow from a breach." Lefemine, 573 So. 2d at 328.  The formula does not include all fees for three years but only the Royalty Fee and Marketing Fee. Although Interstate argues that these fees are 85% of the total fees without deduction of expenses saved by Country due to the breach, these factors do not render the formula or

the resulting amount unreasonable.

Moreover, the failure of the clause to reduce the amount of liquidated damages to present value does not render the clause or the amount invalid or unreasonable. The parties have not cited any case law directed precisely to this issue, but the Court's own research has uncovered some cases touching on this question. In E.F. Coe v. Thermasol, Ltd., 615 F. Supp. 316, 321 (W.D.N.C. 1985), a party complained, as does Interstate here, that the liquidated damages clause "fails to provide for a reduction to the present value of the payments, some of which would not become due for many years." The Thermasol court nevertheless found that the clause resulted in a "reasonable estimate" of the damages, especially considering that the clause did not provide for an inflation adjustment either. See also W & G Seaford Assocs., L.P. v. E. Shore Mkts., Inc., 714 F. Supp. 1336, 1349 (D. Del. 1989) ("In deciding whether to reduce liquidated damages to present value, courts look to the contract and the surrounding circumstances – in other words, there is no *per se* rule. . . . The Court finds that discounting liquidating damages to present value under the present circumstances is contrary to the purpose of such damages and the intent of the parties.").

Although other courts have found fault with liquidated damages provisions that fail to account for present value, those cases typically involved leases with acceleration of scheduled payments and not, as here, a formula based on past revenues where the actual amounts could be more or less depending on varying economic conditions. See, e.g., Gen. Elec. Cap. Corp. v. Laser Hair Removal, Inc., 97 F. Supp. 2d 1210, 1210 (N.D. Ill. 2000) (finding that lease provisions "implicate an unenforceable penalty" where provision declared remaining balance of lease due and did not consider present value); Easton Telecom Servs.,

L.L.C. v. Corecomm Internet Group, Inc., 216 F. Supp. 2d 695, 698 (N.D. Ohio 2002) ("[T]he fact that the liquidated damages provision calls for immediate payment of the full amount otherwise due if the contract had not been breached and does not allow for any reduction for present value, is further evidence that no real 'estimation or adjustment' ever took place between the parties concerning this clause.").  In any event, to the extent these cases could be viewed as indistinguishable, this Court respectfully disagrees with them and instead agrees with the rationales of Thermasol and Eastern Shore and concludes that a failure to reduce to present value is not fatal to the liquidated damages clause.  The formula in the instant Agreement provides a reasonable damages estimate based on recent past experience and need not be inflated by inflation or deflated by present value in order to be a valid, enforceable, and reasonable provision.  The clause is intended to provide an estimate of damages on the terms agreed to by the parties, and reduction to present value is not a per se requirement.

        In its second argument, Interstate contends that the liquidated damages provision is punitive because it does not take into account the point at which the termination of the Agreement occurs.  As an example, Interstate postulates that if the Agreement were terminated during its fourteenth year – with only one year remaining – it would not be fair for a franchisee to have to pay three years' worth of lost royalties as liquidated damages.  This speculative example, however, has no bearing on the facts of the instant case, where the termination occurred after two and a half years, with twelve and a half years remaining in the Agreement's term.  The lack of an articulated exception to the three-year formula for late-term breaches does not render the liquidated damages provision invalid.

Interstate makes one further argument, challenging not the liquidated damages provision directly but the Transfer provisions of the Agreement which led to its breach. Interstate contends that the Agreement gives Country "pervasive control" over Interstate's property and amounts to an unreasonable restraint.  Interstate notes that "[t]he License Agreement does not prevent the owner from disposing of the property, but it attaches to such transfer a hefty price tag."  (Doc. 35 at 8).

The cases cited by Interstate, however, do not support the result it seeks.  In Iglehart v. Phillips, Inc., 383 So. 2d 610 (Fla. 1980), the Supreme Court of Florida found a purchase option to be invalid and unenforceable as an unreasonable restraint on alienation where the deed retained for the grantors the option to repurchase the property for "the amount paid by the grantee to the grantors . . . plus the cost of all permanent improvements placed on said property by the grantee."  Id. at 611.  The court framed the question before it as whether "a repurchase option, expressly set forth in a deed as a covenant running with the land and as part of the consideration for the conveyance, [is] void as being in violation of the rule against unreasonable restraints on alienation or the rule against perpetuities, under circumstances where the option is unlimited as to time, the price is fixed, and no purpose other than consideration is stated in the deed."  Id. at 613.

The court noted that the purpose of both the rule against perpetuities and the rule against unreasonable restraints on alienation "is to ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time."  Id.  With regard to restraints on alienation, "the test which should be applied . . . is the test of reasonableness.  The validity or invalidity of a restraint

depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable." Id. at 614.  Surveying authorities addressing the enforceability of restraints, the Iglehart court explained that "[i]t is generally agreed that an option restraint is reasonable if the option price is at market or appraised value, irrespective of the duration of the option." Id.

The other case cited by Interstate, Peavey v. Reynolds, 946 So. 2d 1125 (Fla. 5th DCA 2006), involved the enforceability of a lease.  The court noted that "the lease grant[ed] the tenant the right to renew the lease indefinitely at a rental rate fixed by the terms of the lease," and "any subsequent landlord would be bound by the terms of the lease." Id. at 1127.  The court found the lease void as an unreasonable restraint on alienation because "[i]f upheld, the lease would have the potential to forever prevent the landlord (and her successors) from being able to utilize the property for any purpose other than renting the property to the corporate tenant at a predetermined rate." Id.  The Peavey court noted that in Iglehart, the court's concern was that "the restriction would discourage the owner from making any improvements to the property," id., and the same problem was present in Peavey.

In the case at bar, the License Agreement's transfer provisions are not perpetual restrictions on the property and are not void as against public policy as were the provisions in Iglehart and Peavey.  The "right of first negotiation" that Country acquired gives it the right to purchase the Hotel at whatever price Interstate would offer it to a third-party purchaser – presumably the market price – and not a price fixed by the Agreement.  Disincentive to

improvement as in <u>Iglehart</u> and <u>Peavey</u> is thus not present.  And, although the Agreement does require that in order for a transfer to be approved it must be to someone who enters into a new license agreement with Country, this requirement does not render it unenforceable.  This is a reasonable part of the Agreement, designed to protect the interests of Country as the franchisor.  <u>Cf.</u> <u>Hanigan v. Wheeler</u>, 504 P.2d 972, 975 (Ariz. Ct. App. 1972) (rejecting argument that provision disallowing assignment without consent of franchise holder was an unlawful restraint on alienation, noting that the "right of alienation or disposition" of property "is not limitless" and "can be defeated where there is a clear stipulation to that effect").  If Interstate could sell the Hotel to anyone it chose without consequence, the fifteen-year Agreement would be gutted; thus, the inclusion of an unauthorized sale as an event of default is reasonable.

In sum, Interstate's motion for partial summary judgment on the issue of the enforceability of the liquidated damages provision of the Agreement is denied.  Both prongs of the Florida test for validity of such provisions are satisfied here, and the provision is not an impermissible restraint on alienation.

2.  Country's Motion (Doc. 38)

In its Motion for Summary Judgment (Doc. 38), Country seeks judgment in its favor on the breach of contract claims.  Specifically, Country seeks past due fees in the amount of $7,787.03, plus prejudgement interest as provided by the Agreement; liquidated damages of $341,675.49; and attorney's fees and costs.  Country's motion is denied in part and granted in part.

### a. Past Due Royalty Fees, Marketing Fees, and Reservation Fees

Country contends that it is entitled to $7,787.03[3] in past due Royalty Fees, Marketing Fees, and Reservation Fees through the date the Agreement was terminated, plus prejudgement interest.  Country has submitted an affidavit and an account reconciliation report in support of this claim.  However, Interstate has responded by filing an affidavit by its COO, Judy Nunnally, stating that Interstate owes only $342.25 in past due fees and attaching Interstate's calculations.  (Ex. A to Doc. 39).  This is a disputed issue of material fact with regard to the amount of fees owed, and thus Country's motion for summary judgment cannot be granted on this claim.

### b. Liquidated Damages

Country also seeks summary judgment on its entitlement to liquidated damages of $341,675.49 – three times the applicable fees of $113,891.83 for the twelve months preceding the Agreement's termination.  The enforceability of the liquidated damages clause has already been addressed in the discussion of Interstate's motion for partial summary judgment, and the parties' arguments are the same on Country's motion.  There is no dispute that the Agreement was terminated due to Interstate's breach, and the Court has found the liquidated damages clause valid.  Moreover, Defendants do not dispute the amount of liquidated damages claimed under the formula.  Country's motion will be granted as to its entitlement to liquidated damages in the amount of $341,675.49.

### c. Attorney's Fees and Costs

---

[3]Country now claims this reduced amount instead of the $55,938.09 it initially claimed in its October 9, 2006 letter.

-14-

Country also seeks summary judgment on the issue of entitlement to attorney's fees and costs under the Agreement.  The motion is denied without prejudice in this regard. Country may make application for attorney's fees and costs in accordance with Local Rule 4.18  after entry of judgment.

### d.  Liability of Defendant Abruzzino

In its summary judgment motion, Country also seeks joint and several liability as to both Defendants on Country's claims.  The liability of Mr. Abruzzino as guarantor has never been at issue in this case; Defendants have only challenged the amount of past-due fees and the validity of the liquidated damages provision.  Although the motion is well-taken with regard to Mr. Abruzzino's joint and several liability for liquidated damages, no judgment can be entered at this time due to the issues of fact remaining with regard to the past-due fees.

### e.  The Counts of the Complaint

In its Complaint, Country set forth seven counts – four against Interstate and Mr. Abruzzino and three against Mr. Singh.  The claims against Mr. Singh – Counts V, VI, and VII – have been resolved and he has been dismissed as a Defendant.  (See Docs. 21 & 22). The four counts against Interstate and Mr. Abruzzino are:  Count I – Breach of License Agreement (Failure to Pay Fees); Count II – Breach of License Agreement (Failure to Pay Liquidated Damages); Breach of License Agreement (Failure to Comply with Post-Termination Obligations); and Count IV – Specific Performance.

Country has not broken its summary judgment motion down specifically by these numbered counts.  It appears that Country's motion pertains only to Counts I and II, and the parties' Joint Pretrial Statement (Doc. 43) seems directed only at Counts I and II as well.  As

set forth below, Country shall inform the Court regarding the status of Counts III and IV.

III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Partial Summary Judgment (Doc. 35) filed by Defendant Interstate Properties, Inc., is **DENIED**.

2.  The Motion for Summary Judgment (Doc. 38) filed by Plaintiff Country Inns & Suites is **GRANTED in part** and **DENIED in part**.  The motion is **GRANTED** with regard to the claim for liquidated damages in Count II.  In all other respects, the motion is **DENIED** as set forth herein.

3.  **On or before Wednesday, July 23, 2008**, Plaintiff shall advise the Court whether it is pursuing Counts III and IV or whether those claims are no longer before the Court.

4.  A final pretrial conference will be set by separate notice.

**DONE** and **ORDERED** in Orlando, Florida this 16th day of July, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party